**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 15-cv-01004-CMA

JACOB DANIEL OAKLEY,

      Plaintiff,

v.

SHARON PHILLIPS, in her official and individual capacity,

      Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

---

      This matter is before the Court on the above-captioned Defendant's Motion to Dismiss.  (Doc. # 14.)  Jurisdiction is proper pursuant to 28 U.S.C. § 1331.  For the reasons discussed below, the Court grants the instant Motion.

## I.  BACKGROUND[1]

### A.  FACTS

      Plaintiff Jacob Daniel Oakley is incarcerated at the San Carlos Correctional Facility ("SCCF"), a Colorado Department of Corrections ("CDOC") facility in Pueblo, Colorado.  Defendant Sharon Phillips is the Nurse Practitioner/Physician's Assistant at SCCF.  The matter before the Court arises from Phillips's alleged failure to provide adequate medical care to Oakley during his incarceration.[2]

---

[1] Unless otherwise noted, the following facts are taken from Oakley's Complaint.  (Doc. # 1.)

In his Complaint, Oakley explains that his health has been progressively deteriorating for ten years.  (Doc. # 1 at 3.)  He states that he has bloody stool, as well as unspecified symptoms of colon cancer, stomach cancer, and a brain tumor.  (*Id.*)  He generally alleges that SCCF medical personnel, particularly Phillips, ignore and trivialize the medical concerns of prisoners at SCCF, and regularly ignore their medical kites.[3] (*Id.* at 3, 4, 12.)

This lawsuit involves a particular instance of allegedly insufficient medical care. Specifically, Oakley alleges that he sought medical care from Phillips after discovering lumps on his testicles.  (*Id.* at 6.)  In response to his request for care, Phillips ran a thyroid blood test.  (*Id.* at 4.)  Phillips did not perform a physical examination of Oakley to confirm the presence of lumps, even though Oakley states that she had done so when another prisoner complained of testicular lumps.  (*Id.* at 4, 6.)

Sometime later, Phillips reviewed the results of the blood test with Oakley in person.  (*Id.* at 11.)  Phillips informed Oakley that, "based on his thyroids," his blood tests results were "normal and healthy."  (*Id.*)  She further stated that if he had thyroid cancer, the blood test would have shown an abnormal blood count.  (*Id.*)

Oakley alleges that, during this follow-up appointment, he told Phillips that the blood test constituted insufficient care on multiple grounds.  (*Id.*)  First, he stated that a thyroid blood test could not prove or disprove the existence of testicular cancer because testicular functions are not related to the thyroids.  (*Id.*)  He also stated that it was his

_____

[2] Oakley includes some general timeframes for the content of his allegations, but no specific dates.

[3] A "kite" is a prisoner's written request for services, such as medical care.

understanding that a blood test could detect cancer only if it had already spread to the blood. (*Id.* at 13.)  Therefore, a blood test will not appear abnormal if a patient already has cancer that has yet to spread to the blood, or if a patient has a benign tumor that could become cancerous if left untreated. (*Id.* at 11.)  He told Phillips that in these cases, an ultrasound of his testicles was necessary to determine the mass and density of the lumps. (*Id.* at 6, 11.)  If the lumps were sufficiently large or dense, a biopsy may be required for a complete assessment. (*Id.* at 6.)  He also told Phillips that even if the blood test was abnormal, that would not establish what type of cancer was present. (*Id.* at 11.)  Finally, he stated that the proper protocol for blood tests involves continuous testing, not a single test. (*Id.* at 13.)  For these reasons, he requested that she perform additional tests, or that she refer him to another doctor for these tests. (*Id.* at 11.)

Phillips refused to perform further diagnostic tests, allegedly stating, "those tests are too expensive and CDOC does not like to spend that kind of money on prisoners." When Oakley questioned the reliability of the blood test and asked if his understandings were correct, Phillips allegedly responded by telling CDOC officers to take him back to his cell. (*Id.* at 11–12.)

In a further effort to challenge this care and obtain additional testing, Oakley submitted medical kites and grievances. (*Id.* at 4.)  He submitted four to six medical kites over a four-month period, and Phillips allegedly ignored all of them. (*Id.*)  Oakley began saving copies of his kites and having nurses sign them in order to prove that he actually sent them. (*Id.*)  When his kites went ignored, he sent a grievance. (*Id.*) According to Oakley, Phillips knowingly lied in response to his grievance, stating that

Oakley had not sent a medical kite as was required.[4]  (*Id.*)  This was a lie because he had already submitted a kite, which Phillips had clearly read because she later referenced something in the kite that she could not have known otherwise.[5]  (*Id.*)

Phillips also refused to make referrals to any other doctors, including specialists, for other treatment or testing.  (*Id.* at 10.)  According to internal rules, policies, or procedures of the SCCF and the CDOC, Phillips must make all referrals.  (*Id.*)  There is no process for prisoners to go outside of this chain of command when seeking medical care.  (*Id.*)  Therefore, without approval by Phillips, Oakley was unable to seek care from a specialist.  (*Id.*)

Ultimately, Oakley was never diagnosed with testicular cancer or any other serious illness.  (*Id.* at 9.)  He contends that this is the result of Phillip's failure to use the proper testing procedures, and that her actions have put him at risk of either developing cancer or of his undiagnosed cancer spreading and worsening.  (*Id.* at 9, 13.)  He does not submit evidence that he does indeed have cancer or another diagnosable illness.

## B.  PROCEDURAL HISTORY

---

[4] Presumably, prisoners may not grieve issues relating to medical care if they have not sent a medical kite first.

[5] It is unclear from Oakley's Complaint if he submitted this kite before or after Phillips explained his blood test results.  The relevant portion of Oakley's Complaint states: "I explained how she was wrong . . . when she went over the blood tests results with me cause I asked for more to be done, when she denied me I grievenced [sic] her than [sic] she claimed I didn't submit a medical kite on it.  She used that thyroid blood test to explain how I don't have testicular cancer when she went over it with me.  She contradicted herself – if I didn't submit a medical kite to her on it, she . . . wouldn't . . . have told me I didn't have testicular cancer when she saw me.  That means she knew in advanced [sic] – how would she know about [that] unless I had previously alerted her?"  (Doc. # 1 at 4.)  At any rate, his concern is that she referenced information from the kite despite claiming she never received it.

Oakley filed his Complaint on May 11, 2015.  (Doc. # 1.)  He asserted a claim or relief against Phillips under 42 U.S.C. § 1983, alleging Phillips had violated his Eighth Amendment rights by failing to provide adequate medical care.

On July 20, 2015, Phillips filed the instant Motion to Dismiss on the grounds that the care provided by SCCF was adequate, and that, in any case, Phillips is entitled to qualified immunity.  (Doc. # 14.)  Oakley filed his Objection in opposition to this motion on August 17, 2015.  (Doc. # 19.)

## II. DISCUSSION

### A.  LEGAL STANDARD

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court "accept[s] all the well-pleaded allegations of the complaint as true" and "construe[s] them in the light most favorable to the plaintiff."  *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).  The Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007)).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that" the alleged claim might have occurred.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (citation and quotation marks omitted).  "[T]he complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177.

In evaluating the plausibility of a given claim, the Court "need not accept conclusory allegations" without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.

In addition, because Oakley appears *pro se*, the Court construes his complaint liberally and holds it to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). To be sure, this does not excuse *pro se* plaintiffs from complying with ordinary procedural rules, *McNeil v. U.S.,* 508 U.S. 106, 113 (1993); *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir. 1994), or from their obligation to plead sufficient, non-conclusory facts to provide a basis for their claims, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, in evaluating the sufficiency of the complaint, the court may forgive a *pro se* plaintiff's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. Dismissal will be proper only if it is clear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Haines*, 404 U.S. at 520–521 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)), and that the deficiency cannot be resolved by amending his complaint, *Hall*, 935 F.2d at 1110.

## B.  ANALYSIS

Phillips argues that Oakley failed to state an Eighth Amendment Claim arising from her role as a medical provider or from her role as a "gatekeeper" to medical help. (Doc. # 14 at 3.)  She further argues that she is entitled to qualified immunity.  (*Id.* at 9.) The court will address each issue in turn.

### 1.  <u>Eighth Amendment Violation Claim against Defendant Phillips for Failure to Provide Medical Care</u>

The Eighth Amendment protects against the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  The elementary principles of dignity, civility, humanity, and decency establish:

> the government's obligation to provide medical care for those whom it is punishing by incarceration.  An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.  In the worst cases, such a failure may actually produce physical torture or a lingering death, the evils of most immediate concern to the drafters of the [Eighth] Amendment.  In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.

*Id.* at 103 (internal quotation and citation omitted).

The Eighth Amendment's prohibition against cruel and unusual punishment encompasses deliberate indifference by prison officials.  *Howard v. Waide,* 534 F.3d 1227, 1235 (10th Cir. 2008) (citing *Estelle,* 429 U.S. at 105).  Specifically:

> Deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle,* 429 U.S. at 104–05 (internal citation omitted).

An Eighth Amendment claim for deliberate indifference involves "a two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum,* 439 F.3d 1227, 1230 (10th Cir. 2006). The objective component requires a showing that the prisoner's medical need was "sufficiently serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). This standard is met if the medical need was "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir. 1980) (quotation and citation omitted). The question is not limited to whether the inmate's symptoms render a medical need sufficiently serious, but also extends to whether the potential harm to the inmate is sufficiently serious. *Mata v. Saiz,* 427 F.3d 745, 752 (10th Cir. 2005).

Under the subjective component, the defendant must have a "sufficiently culpable state of mind." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (citation omitted); *see also Self,* 439 F.3d at 1230–31. In other words, the plaintiff must establish that the defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999) (internal citation and quotation omitted). "Unlike the objective component, the symptoms displayed by the prisoner are relevant to the subjective component of deliberate indifference. The question is: 'were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?'"

*Martinez v. Beggs,* 563 F.3d 1082, 1089 (10th Cir. 2009) (quoting *Mata,* 427 F.3d at 753).[6]  As such, the Court's inquiry is whether Phillips's response was proportional to the symptoms that Phillips knew about or should have known about at the time that she ordered the blood test.  *See Self*, 439 F.3d at 1233–34 (no deliberate indifference where prisoner presented with cough, fever, and other non-specific symptoms and prison doctor provided medication consistent with a respiratory infection).

In support of his claim of an Eighth Amendment violation, Oakley alleges that Phillips, acting in her individual and official capacity, violated Oakley's right to be free from cruel and unusual punishment by failing to properly diagnose or treat him when he presented with symptoms of a serious medical condition.  (Doc. # 1 at 6, 8.)  He asserts that Phillips's use of a blood test instead of an ultrasound precluded a testicular cancer diagnosis, and that without such a diagnosis, he is unable to receive the timely treatment that would prevent testicular cancer from worsening or developing.  (*Id.* at 9.)  For the reasons below, the Court finds that Phillips's actions do not constitute deliberate indifference to Oakley's serious medical needs.

---

[6] The subjective component can also be established by showing that "delay in providing medical treatment caused either unnecessary pain or a worsening of her condition.  Even a brief delay may be unconstitutional."  *Mata*, 427 F.3d at 755; *see also Dougherty v. Kansas*, No. 08–3066, 2008 WL 2906505, at *3 (D. Kan. July 24, 2008) (unpublished) ("a delay in providing medical care does not violate the Eighth Amendment unless the plaintiff has suffered 'substantial harm' from the delay"; lifelong handicap, permanent loss, or considerable pain amounts to substantial harm).  Therefore, Phillips is correct in her Motion to Dismiss that Oakley would need to show actual, substantial harm in order to sustain a claim based on a delay in treatment by Phillips.  (Doc. # 14 at 7.)  However, because Oakley claims in his Opposition to Phillips's Motion to Dismiss that his claim is one of denial of care rather than delay in care (Doc. # 19 at 17, 18), it is not necessary for the Court to determine whether a substantial harm in fact occurred.  Indeed, Oakley does not claim that Phillips waited too long to perform an ultrasound or other diagnostic procedure, but rather, that she did not perform one at all.

a.  **The Objective Component**

With respect to the objective component, Oakley alleges that he presented to Phillips with testicular lumps, and informed her that he believed that the lumps were indicative of testicular cancer.  (Doc. # 1 at 6, 11).  In support of her Motion to Dismiss, Phillips contends that because Oakley was never ultimately diagnosed with testicular cancer or any other serious illness, but only suspects that he has such an illness, he did not have a sufficiently serious medical need.  (Doc. # 14 at 4.)  In his Objection to Phillips's Motion to Dismiss, Oakley counters that the Eighth Amendment does not only protect prisoners who are terminally ill or in serious pain, but also requires that doctors provide care for that any condition that cannot be self-treated.  (Doc. # 19 at 14–15.)  Although both parties are incorrect as a matter of law, for the following reasons, the Court finds that Oakley satisfied the objective component of his deliberate indifference claim.

As discussed above, the objective prong of an Eighth Amendment claim for deliberate indifference is met when a person's medical need has either been diagnosed by a doctor as requiring treatment, **or** is so obvious that even a layperson would recognize that it required a doctor's treatment.  *Ramos*, 639 F.2d at 575.  Therefore, while a physician's diagnosis of cancer or another serious illness **could** establish the seriousness of a prisoner's medical need, such a diagnosis is not required to establish the objective prong.

At the same time, Oakley's personal belief, standing alone, cannot sustain an Eighth Amendment claim either, as the lack of response by Phillips would then only

amount to "a failure to treat [a] self-diagnosed ailment[]," which is not actionable. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (citing *Aswegan v. Henry*, 49 F.3d 461, 464–65 (8th Cir. 1995); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (prisoner stated a claim for deliberate indifference when officials removed him from Hepatitis C treatment program despite having a physician's diagnosis of Hepatitis C)).

However, a prisoner may also establish the seriousness of their medical need under the layperson standard, which requires a showing that the medical need was "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos,* 639 F.2d at 575 (quotation and citation omitted).  The Court finds that Oakley did so here.  Even without specifying the size or nature of the lumps, the timeframe of their development, or whether they worsened after he initially discovered them, testicular lumps are exactly the sort of medical concern for which laypeople would consult a doctor, and thus, objectively serious.

b.  **The Subjective Component**

Because Oakley has established that his medical need was objectively serious, the next step in the Court's inquiry is whether Phillips knew that Oakley faced a substantial risk of harm, and disregarded that risk.  *Mata*, 427 F.3d at 752.

To establish the subjective competent, Oakley asserts that Phillips ordered a blood test which was inadequate in light of his symptoms, and that she should have performed a physical exam, ultrasound, and possibly a biopsy instead of, or in addition to, the blood test.  (Doc. # 1 at 6.)  In support of her Motion to Dismiss, Phillips contends

that her choice to administer a blood test was within her reasoned judgment as a medical professional, and Oakley's assertion that she should have administered a different test only evidences a difference in opinion about the course of medical treatment, not deliberate indifference. (Doc. # 14 at 6.) In support of his Opposition to Phillips's Motion to Dismiss, Oakley counters that Phillips cannot claim a difference in medical opinion when the care that she did provide failed to meet established medical standards. (Doc. # 19 at 6). He asserts that he made Phillips aware of the risk of harm he faced if she did not perform the requisite tests, but that she still intentionally refused to perform them, even though failure to do so could result in the development or worsening of cancer. (*Id.* at 2.)

The Court finds that Phillips did not disregard a risk of harm to Oakley, but instead, appropriately responded to the risk by administering a diagnostic blood test. First, Phillips did not avoid learning information in order to claim ignorance of the risk to Oakley. Oakley does not allege that she was nonresponsive to his concern or that she ignored his symptoms.[7] While Oakley claims that Phillips should have done a physical exam to confirm the presence of the lumps, her failure to do so does not indicate that she "refused to verify underlying facts that [s]he strongly suspected to be true, or declined to confirm inferences of risk that [s]he strongly suspected to exist." *Mata*, 427 F.3d at 752 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. 825, 843, n. 8); *Estate of Booker*

---

[7] The relevant inquiry is Phillips's response to the symptoms that Phillips knew or should have known about at the time of the allegedly deficient care. *See Self*, 439 F.3d at 1233–34. While Oakley's complaint describes other medical issues, such as bloody stool and symptoms of a brain tumor or other types of cancer, he does not allege that Phillips was aware of these symptoms at this visit. Therefore, the Court will not consider what Phillips should have done if she had known of these symptoms in addition to the testicular lumps.

*v. Gomez*, 745 F.3d 405, 432 (10th Cir. 2014) (defendant jail officials cannot avoid liability by claiming that failure to check prisoner's vitals established that they did not have requisite subjective knowledge).  Instead, even if she did not believe that the lumps were indicative of testicular cancer or even that they existed, she responded proportionately to these possibilities.  Oakley's symptoms were the sort that did not necessitate any emergency care, but still required more than a visual or physical exam, and Phillips's response struck that balance.

Further, Phillips's decision to administer a blood test, rather than an ultrasound or biopsy, does not constitute an Eighth Amendment violation.  When a health care provider exercises his or her reasoned professional judgment in providing care to a patient, this does not establish the requisite intent absent evidence that the provider consciously disregarded a substantial risk of harm.  *See Estelle*, 429 U.S. at 107; *Self*, 439 F.3d at 1231, 33.  The choices of whether to order additional diagnostic tests or whether to consult a specialist are classic examples of matters within a health care provider's professional judgment.  *Estelle*, 429 U.S. at 107; *Self*, 439 F.3d at 1232 (no deliberate indifference where physician provided treatment for symptoms but "nothing suggest[ed] that…symptoms obviously required unusual medical skill or ability thus necessitating referral"); *Ledoux v. Davies,* 961 F.2d 1536, 1537 (10th Cir. 1992) (types of medication prescribed and referrals to specialists are generally matters of medical judgment).  The decision that a negative blood test does not warrant additional action does not establish deliberate indifference, even if the patient disagrees with that decision.  *See Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("a

13

prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation").  At most, such a decision may constitute a "negligent failure to provide adequate medical care, even one constituting medical malpractice, . . . [but this] does not give rise to a constitutional violation." *Id*.  Phillips's choice to provide a blood test, but not to perform further tests or procedures, was consistent with the symptoms presented by Oakley, and Oakley's disagreement with that choice is insufficient to show that Phillips disregarded a substantial risk of harm to him.  *See Crum* 439 F.3d at 1233

Even if Oakley were correct in his belief that he had testicular cancer and that Phillips failed to diagnose it, or that she tested him for the wrong illness, this alone would not establish Phillips's liability under the Eighth Amendment.  *Self*, 439 F.3d at 1234.  The subjective part of the test is not satisfied when a physician evaluates a patient's symptoms and provides care consistent with those symptoms, but still misdiagnoses the patient, *id*. at 34–35, particularly when there is evidence of a good faith effort to treat and diagnose the condition.  *See Mata v. Saiz*, 427 F.3d 745, 760–61 (10th Cir. 2005) (although patient was experiencing a heart attack, the subjective component was not met because nurse's subjective belief that patient was not having a heart attack was based on patient's symptoms, but nurse still directed patient to rest and to report worsening symptoms; no evidence of deliberate indifference particularly because nurse "made a good faith effort to diagnose condition").

Beyond his allegations about the inadequacy of the blood test, Oakley alleges other acts of deliberate indifference relating to Phillips's medical care.  Although Phillips

does not directly address these other acts in her Motion to Dismiss, the Court will consider them here.  First, Oakley states that Phillips ignored his medical questions because she had a guilty conscience and she wanted to avoid incriminating herself.  (Doc. # 1 at 14.)  This allegation seems to relate to her ordering a guard to send Oakley back to his cell after he asked questions about the reliability and efficacy of the blood test.  However, Oakley's questions did not alert Phillips to any additional symptoms or medical concerns, but merely related to Phillip's choice of a blood test.  Oakley's challenges to the reliability of the procedure certainly show that he disagreed with the test Phillips used, but not that he made her aware of **new** symptoms or conditions that required **further response** beyond the blood test.

Oakley also states that Phillips's "lie" in her grievance response evidences deliberate indifference.  (*Id.* at 14.)  Again, the timeline is not precise, but it seems that after Phillips refused to do additional testing, Oakley submitted medical kites, and then submitted a grievance when those kites went unanswered.  (*Id.* at 4.)  In her response to the grievance, Phillips claimed that he never submitted a medical kite in the first place, so a grievance was improper.  (*Id.*)  Oakley states that Phillips knew this to be false because later, she referenced his concern about testicular cancer, which apparently was a concern exclusively raised in a kite.  (*Id.*)  However, even if she lied in her grievance response, Phillips addressed his concern about testicular cancer by ordering the blood test.

Finally, Oakley generally claims that Phillips continuously ignored his medical kites and complaints, and provided medical care that she knew to be inferior.  (*Id.* at

14.)  It is unclear whether these allegations relate to this particular instance, or instead to Oakley's claim that Phillips has a history of these practices.  To the extent that it relates to medical concerns other than those discussed above, Oakley does not provide even the minimal factual support required to survive dismissal here.

Therefore, because Oakley did not satisfy the subjective component, he failed to establish that Phillips violated his Eighth Amendment rights.  Accordingly, the Court finds that dismissal of Oakley's claim of deliberate indifference to his serious medical needs is proper.

## 2.  <u>Eighth Amendment Claim against Phillips under the "Gatekeeper Theory"</u>

Oakley also contends that Phillips was deliberately indifferent to his serious medical need because she prevented him from receiving additional care or evaluation by other medical professionals or specialists.  (Doc. # 1 at 10.)  In response, Phillips states that Oakley did not assert sufficient facts to support his conclusion that Phillips was a "gatekeeper" to make her liable for not making referrals.  (Doc. # 14 at 8.)  In support of his Opposition to Phillips's Motion to Dismiss, Oakley counters that SCCF staff will not refer any prisoner to a specialist without the approval of Phillips, so she is the sole person responsible for procuring outside treatment for prisoners.  (Doc. # 19 at 23.)

The "gatekeeper theory" provides an additional basis for Eighth Amendment liability.  *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000) (citing *Ramos*, 639 F.2d at 575).  Under this theory, prisoners may establish deliberate indifference by showing that corrections officials prevented them from receiving medical care or refused

access to medical personnel capable of evaluating their need for care.  *Id.*  The typical

gatekeeper case involves non-medical personnel, such as prison guards, who fail to

request medical assistance on behalf of a prisoner.  *See id.*  However, medical

personnel themselves may also be liable under this theory if their "role in a particular

medical emergency is solely to serve as a gatekeeper for other medical personnel

capable of treating the condition," and, with the requisite intent, they refuse to fulfill that

role.  *Id.*

The Court finds that Oakley did not sufficiently allege that Phillips was a

"gatekeeper."  In *Sealock*, while there was a fact issue about whether the defendant

Physician's Assistant actually knew about the plaintiff's chest pain, it was undisputed

that if he did know, he had a duty to contact paramedics immediately.  Here, Oakley

does not claim that Phillips had a duty to request assistance from other medical

personal whenever someone complained of testicular lumps or a similarly serious

condition.  *Id.*  In fact, Oakley states that Phillips was "capable of examining [him] and

ordering those needed tests but she refused to do it herself," conceding that she was

the person who was obligated to address medical concerns of this sort.  (Doc. # 1 at

10.)  Because Phillips was not a "gatekeeper," Oakley cannot support a claim based on

her refusal to act in that role.

Accordingly, the Court finds that dismissal of Oakley's claim against Phillips

under the gatekeeper theory is warranted.

### 3.  Qualified Immunity

Government officials performing discretionary functions are protected from individual liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To defeat a qualified immunity defense, a plaintiff must establish (1) that the defendant violated a constitutional or statutory right; and (2) that the right was clearly established in the law at the time of the violation. *People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1207 (10th Cir. 2002). The Court may exercise its discretion in determining which prong of the qualified immunity test to address first. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

In her Motion to Dismiss, Phillips argues that Oakley failed to satisfy either step to defeat her qualified immunity defense.  (Doc.  # 14 at 9.)  In his Objection to Phillips's Motion to Dismiss, Oakley contends that his right to be free from deliberate indifference to his serious medical needs is a clearly established right, even if Phillips did not actually know the requirements of this law, and that Phillips violated this right.  (Doc. # 19 at 19.)  The Court finds that Oakley satisfies one component of this inquiry, but not both, so Phillips does have qualified immunity in this case.

Contrary to Phillips's contention that "there is no clearly established law in this jurisdiction that states that the actions of Defendant. . . violated any law," (Doc. # 14 at 9), it is well established that deliberate indifference to an inmates serious medical need is a violation of the Eighth Amendment.  *See, e.g., Sealock*, 218 F.3d at 1209. However, as indicated above, Oakley failed to allege facts showing deliberate

indifference, though the claim itself is well-settled in Constitutional doctrine.

Accordingly, Phillips is entitled to qualified immunity.

### III.  <u>CONCLUSION</u>

Because Oakley failed to satisfy the subjective component of the Eighth

Amendment violation standard, and because Phillips is entitled to qualified immunity,

the Court hereby GRANTS Defendant's Motion to Dismiss (Doc. # 14) and dismisses

Oakley's claim.

A dismissal with prejudice is appropriate where a complaint fails to state a claim

under Rule 12(b)(6) and "granting leave to amend would be futile." *Brereton v. Bountiful*

*City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (citing *Grossman v. Novell, Inc.*, 120

F.3d 1112, 1126 (10th Cir. 1997)).  As there are no additional facts that could alter the

Court's conclusion regarding Oakley's deliberate indifference claim, amendment would

be futile, and this case will be dismissed with prejudice.

Accordingly, IT IS ORDERED THAT this case is DISMISSED WITH PREJUDICE

in its entirety.

DATED: September 30, 2015

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge